NEW-YORK,<br>May 1830.<br>Jackson<br>v.<br>Page.

---

## JACKSON, ex dem. Hunter, *vs.* PAGE.

A slight variance, e. g. fifty cents, between the execution and the judgment as to the amount recovered before a justice of the peace, will not effect the right of a purchaser of property sold by virtue of such execution.

*Form of execution.* and renewals thereof by a *county clerk* on a transcript of a justice's judgment, approved.

The *clerk* is authorized to *renew* an execution issued by him or to issue a *further* execution.

A variance in the description of premises sold between the certificate of sale and the sheriff's deed, does not affect the title.

A re-delivery of a deed of land by the grantee to the grantor does not revest the title in the grantor.

The omission to record a deed does not prejudice the right of the grantee or those claiming under him as against a subsequent grantee with notice.

THIS was an action of ejectment, tried at the Oswego circuit in June, 1828, before the Hon. NATHAN WILLIAMS, one of the circuits judges.

The plaintiff claimed to recover the premises in question under a sheriff's deed by virtue of a judgment and execution and sale thereon. The judgment was rendered by a justice of the peace of the county of Oswego in favor of Willliam C. Hunter, the lessor of the plaintiff, against one Garner Comstock on 24th July, 1823, for $50 damages and $367 1-2 costs, and on the same day a transcript was filed in the clerk's office of the county. On the 25th August, 1823, an execution was issued by the clerk of the county in the following words: "Oswego county, ss. The people of the state of New-York, by the grace of God free and independent, to our sheriff of our county of Oswego, greeting: Whereas judgment has been rendered before John Bostwick, Esq. one of the justices of the peace of the said county, against Garner Comstock, in favor of William C. Hunter, for *fifty-four dollars and seventeen and a half cents* damages and costs: and whereas a transcript of said judgment has been duly filed and entered in the clerk's office of the county of Oswego according to the statute in that case made and provided, passed April 10, 1818: These are therefore to command you forthwith to levy of the goods and chattels, lands and tenements of the said defendants, (except such articles as are by law exempted,) the amount of the said judgment, with interest from the 24th day of July, 1823, on which day judgment was rendered till received; and in forty-five days from the date hereof, and not sooner, unless after diligent search you cannot find sufficient goods and chattels, lands and tenements whereon to levy to satisfy this execution, then you are hereby commanded to take the body of the said defendant and convey him to the common gaol of the county of Oswego the keeper whereof is hereby commanded to receive the said defendant and him safely keep until duly discharged acording to law. And you are further commanded to make return of your proceedings within ninety days from the date hereof. Hereof fail not at your peril. Witness the said John Bostwick, Esquire, at Richland, this 25th day August A, D. 1823. Damages $50. Just. costs 3,67 1-2. Clerk do. 50 $54, 17 1-2. Hiram Hubbell, Clerk." Which execution was received in evidence, although objected to as to its

*form* and on account of the *variance* between the sum men-
tioned in it and the sum for which the judgment was rendered.
On the execution was an endorsement in these words; "Clerk's
office, Oswego county, ss. I hereby renew the within exe-
cution this 29th day of Dec. 1823, fees 2s. Hiram Hubbell,
clerk." And a similar endorsement dated 13th June, 1825.
The defendant objected to the sufficiency of such endorse-
ments to renew the execution ; they were, however, read in
evidence.

On the 27th August, 1825, a certificate of sale of three
acres of land by virtue of the execution was filed in the
clerk's office, of which an exemplification was read in evi-
dence ; the certificate described the premises sold as situate
in the north part of lot No. 53 of a certain tract, and as be-
ginning at a certain point distant a given number of chains
from the *northwest* corner of the said lot. The original cer-
tificate was also produced ; in it the word *northwest* in the
description of the place of beginning of the premises was ob-
scurely written, and might, as the case stated, without vio-
lence, be read *northeast*. The plaintiff then produced a deed
from the sheriff of the county of Oswego, by virtue of a sale
on the execution, of the premises in question, to the lessor of
the plaintiff, bearing date 26th April, 1827, in which the cor-
ner of the lot above referred to was described as the *north-
east* corner, and proved that the *northwest* corner of lot 53
was on the shore of lake Ontario, and that assuming it as the
place of beginning, the premises sold would lie in the lake.
The defendant objected to the deed being read to the jury, on
the ground of the variance between it and the certificate, but
the objection was overruled by the judge.

To shew the title of Comstock, against whom was the judg-
ment and execution, by virtue of which the sale was had, a
witness of the name of Marsden was called by the plaintiff,
who testified that in 1823, and for several years previous
thereto, he, the witness, was in possession of the premises in
question ; that he executed a deed of the same to Comstock,
who afterwards re-delivered the deed to him with the intent
to revest the title in him, the deed not having been recorded ;
and that subsequently he conveyed the same premises to the

NEW-YORK,
May, 1830.

Jackson
v.
Page.

defendant in this cause. He stated that on diligent search for the deed he had not been able to find it, and believed it to be lost or destroyed. The deed he thought was executed by him three or four years before the trial. Another witness testified that it was executed as long since as from 5 to 10 years previous to the trial. The testimony of Marsden was objected to, but received after being released by the plaintiff from liability under his covenants to Comstock.

The defendant produced his deed of the premises in question from Marsden, bearing date 25th March, 1826, duly recorded in January, 1827. To rebut which the plaintiff proved full knowledge in the defendant previous to obtaining his deed of the conveyance from Marsden to Comstock. A verdict was taken for the plaintiff, subject to the opinion of this court upon the several questions raised on the trial.

*By the Court,* SUTHERLAND, J. The principal questions in this case are, 1. As to an alleged variance between the execution and the judgment. 2. As to the form of the execution, and the authority of the clerk to renew it. The judgment as certified in the transcript was for $53,67½. The execution recites the judgment as having been rendered for $54,17½. It states correctly the names of the parties, the justice before whom the judgment was obtained, the day when rendered, and the return and filing of the transcript. The only variance is in the amount. It arose undoubtedly from the omission of the justice to include in the costs the clerk's fee of $\frac{50}{100}$ for issuing execution, which the clerk added when he made out the writ. This appears from a memorandum at the bottom of the execution.

It sufficiently appears that the execution given in evidence was in fact issued upon the judgment in question, and that the sale was made under that judgment and execution. The object in proving the judgment and execution was to shew a competent authority for the sheriff to sell; and the rights of a purchaser at such sale ought not to be affected by a slight variance between the execution and the judgment, which it would be a matter of course to amend upon application to the court, if the execution had issued from a court of record The variance in no respect affects the force or validity of the

execution, or the sale under it, if it be admitted that it issued upon the judgment, and conforms to it in all essential particulars. In *Jackson* v. *Pratt*, (10 Johns. R. 386,) there was a difference of one shilling between the sum mentioned in the execution and the *toto attingens* clause at the end of the record; this was held to be immaterial. So in *Jackson* v. *Davis*, (18 Johns. R. 10,) it appeared from the execution that the judgment on which it issued was docketed on the 2d of May; whereas the exemplification of the record given in evidence shewed that the judgment was docketed on the 22d of May. It was held that the irregularity in the *fi. fa.* did not invalidate the title derived under the sheriff's sale. The same doctrine was distinctly asserted in *Jackson* v. *Streeter*, (5 Cowen, 529.)

2. The execution, in point of form, appears to correspond substantially with the directions of the statute, (vide 10th sect. of the act of April 10th, 1818, "to extend the jurisdiction of justices of the peace," and the 3d section of the act of 21st April, 1818, modifying the preceding act.) The only question upon this point is as to the authority of the clerk to keep the execution alive by renewing it. The 12th section of the act of April 10th, 1818, page 81, provides, "That the form of proceedings shall be in all respects the same as under the act for the recovery of debts to the value of $25; and all the provisions of the said act, and the amendments thereto, are declared to apply to this act, except as otherwise directed. The 11th section of the $25 act, (1 R. L. 393,) provides, "That if no goods or chattels can be found, or not sufficient to satisfy the execution, the party recovering the judgment may, from time to time, renew such execution, or have further execution against the goods and chattels," &c. of the defendant. Unless this provision applies to the execution to be issued by the clerk, there is no authority, as I perceive, for the issuing of a second execution in any case upon a justice's judgment, where the transcript is filed in the court of common pleas. This is the only statutory provision upon the subject. The court of common pleas has no jurisdiction or authority to award a second execution, or in any manner to control or interfere with the execution issued by their clerk

upon justices' judgments. The justice before whom the judgment was obtained, although the execution is tested in his name, has no control over it. It is executed by the sheriff, not by a constable, and is returnable in the court of common pleas, and not before the justice. It is an extraordinary statutory proceeding. The legislature could not have intended to confine the plaintiff in such a judgment to a single execution, where nothing or only a part of the debt was collected. They must have supposed that the broad and comprehensive phraseology of the 12th section conferred the requisite authority upon this subject upon somebody. It declares that all the provisions of the $25 act and the amendments thereto shall apply to this act, &c. Among those provisions is that for the renewing of and issuing further executions. The eleventh section says, in general terms, that the party recovering judgment may from time to time renew such execution, or have further execution, &c. It does not, in terms, declare how the execution shall be renewed, or by whom the new one shall be issued. But, upon general principles, these acts must be done by the same authority which issued the first execution, and such has been the construction given to that section and the uniform practice under it. (Cowen's Treat. 649.) I am of opinion, therefore, that the clerk who issues an execution in such cases has authority to renew it or to issue further execution, and that the objection to the plaintiff's title on that ground is invalid.

3. The variance between the description of the premises in the sheriff's deed and in the exemplification of the certificate cannot prejudice the plaintiff. The evidence renders it probable that the certificate on file corresponds precisely with the deed, and that the error is in the exemplification; but if it were otherwise, it would not affect the title of the purchaser. The evidence leaves no doubt that the deed contains a correct description of the premises sold; and in *Jackson, ex dem. Hooker* v. *Young*, (5 Cowen, 269,) it was held that the entire omission of the sheriff to file a certificate would not prejudice the purchaser. The statute is directory to the sheriff, but the certificate is not necessary to the title of the purchaser.

4. The loss of the deed from Marsden to Comstock was <span>NEW-YORK, May, 185٠.</span> sufficiently proved to admit parol evidence of its contents; and the deed having been once delivered to the grantee and accepted by him, its re-delivery to the grantor did not revest the legal title in him. (*Jackson* v. *Chase*, 2 Johns. R. 84. 2 H. Black. 263. 3 T. R. 156. 1 Johns. Ch. R. 240,)

5. It was clearly proved that the defendant had express notice of the deed from Marsden to Comstock, prior to the conveyance to Marsden to him of the 25th March, 1826. He cannot avail himself, therefore, of the neglect or omission to record the first deed.

On the whole case the plaintiff is entitled to judgment.